274



## OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable Weaver H. Baker, Chairman
State Board of Control
Austin, Texas

Dear Sir:

Opinion No. O-6862
Re: Can a person be committed
legally to State Hospital
for insane for period of
more than 90 days without
an adjudication by a duly
qualified jury?

We have received your recent communication request-
ing an opinion on the following:

"I transmit herewith a transcript, together
with commitment, in Cause No. 1990, in the County
Court of Dallas County, Texas, styled - 'The State
of Texas vs. Louise Dinglestedt.'

"You will note the County Judge tried the
case after the appointment of an attorney to rep-
resent the defendant, without jury, adjudged her
a lunatic, and committed her to the custody of
the Sheriff or any Constable of Dallas County for
conveyance to the State Hospital at Terrell, Texas.

"The law makes the five major mental hospitals
of Texas, including Terrell, custodial institutions.
Louise Dinglestedt was, prior to this trial, admitted
to the Terrell State Hospital on June 25, 1945 on a
ninety day commitment, as provided in the Constitu-
tion and laws of this State, and was discharged from
this commitment on September 21, 1945. Therefore,
the above indicated trial was had.

Honorable 'eaver H. Baker - page 2

"Did the County Judge of Dallas County have the legal right to commit Louisa Dinglestedt to the custody of the peace officers named in the commitment for transmission to the Terrell State Hospital without trial by jury."

House Bill No. 188 (Chapter 182, page 251, General and Special Laws of Texas) enacted at the Regular Session of the 48th Legislature in 1943, reads as follows:

"Section 1. Article 3193h of Title 81, Chapter 2 of the Revised Civil Statutes of Texas of 1925, is hereby amended so as to read as follows:

"'Article 3193h.

"'Section 1. The superintendent of any institution to which an insane or other mentally ill person may be committed, may receive and detain therein as a boarder and patient by and with the consent of the State Board of Control any person who is desirous of submitting himself to treatment, and who, being mentally competent to make such application, makes written application therefor; and any such person who desires to so submit himself for treatment may make such written application. No such person shall be detained more than three (3) days after having given written notice of his intention or desire to leave the institution. Whenever any such person is received into any institution, the superintendent thereof shall give immediate notice of such reception to the Board of Control.

"'Section 2. The superintendent of any such institution who receives a voluntary patient must, within ninety (90) days thereafter, discharge such patient, provided such patient has not become mentally incompetent during his stay in such institution.

"'Section 3. After the admission of a patient, mentally competent to make application therefor, and

Honorable eaver H. Paker - page 3

during the period of his stay, should it be deter-
mined by the superintendent of such hospital in
which he is confined that he is incompetent, such
fact shall be certified to the County Judge of
the county in Texas where such patient has a legal
residence and such County Judge shall cause such
patient to be tried in absentia upon a complaint
charging lunacy, verified and filed by the super-
intendent or other physician of the institution
where such patient is confined, or any other duly
licensed physician. Such County Judge shall ap-
point a licensed attorney of the State of Texas to
represent such patient and no such patient shall
be adjudged insane, except upon the evidence of
two duly licensed physicians, one of whom shall
be on active duty at the institution where such
patient is confined. All such evidence may be by
deposition, or given in person, and the case shall
be tried for the county by the county or district
attorney. After trial, a transcript of the record
thereof shall be transmitted by the clerk of the
County Court to the hospital having such patient
in custody.'

"Section 2. The fact that there is no Stat-
ute providing for the length of time a voluntary
patient may remain in a State Hospital, and the
further fact that there is no provision for the
procedure to be followed by the superintendent of
the State Hospital and the Board of Control when
the voluntary patient becomes insane during his
stay in the hospital, create an emergency and an
imperative public necessity that the Constitutional
Rules requiring bills to bo read on three several
days in each House be suspended, and said Rule is
hereby suspended, and this Act shall take effect
and be in force from and after its passage, and
it is so enacted.

"Passed the House, March 17, 1943: Yeas 127,
Nays 0; passed the Senate, April 15, 1943: Yeas
26, Nays 0.

Honorable Weaver H. Baker - page 4

"Approved April 20, 1943.

"Effective April 20, 1943."

Senate Bill No. 109 (Chapter 226, page 347, General and Special Laws of Texas) enacted at the Regular Session of the 48th Legislature in 1943, reads as follows:

"Section 1. No person shall be committed to any state hospital or state institution for the treatment of the insane or other mentally ill persons for a period of more than ninety (90) days unless such person has been adjudged insane by a duly qualified jury in a lunacy proceeding, as provided for under the present Statutes of the State of Texas. The County Judge trying such lunacy case shall cause the clerk of said court to prepare forthwith a transcript of such proceedings in duplicate and send one (1) copy of the same to the state hospital, or institution, to which such person is committed, and one (1) copy to the State Board of Control.

"Section 2. Hereafter the County Judge, upon conviction of any person in a lunacy trial, and the County Judge, or District Judge, in any other legal proceeding, requiring a commitment, or order to transfer any person to any eleemosynary institution of this state, shall cause within ten (10) days after the entry of judgment, to be prepared and entered in the minutes of his court, by three (3) disinterested appraisers, under oath, an itemized inventory and appraisement of the estate of any such person, if any, and shall cause the same to be issued in duplicate, duly certified by the clerk of the County Court, and a copy thereof mailed to the eleemosynary institution where such patient was committed, and one (1) copy thereof to the state Board of Control at Austin, Texas. These reports shall be made by such appraisers, certified and mailed whether such property exists, or not, and

Honorable Keever E. Baker - page 5

the appraisers and officers of the court shall be paid fees chargeable to the estate, if any, of such person, as are now allowed by law in guardianship proceedings.

"Section 3. In the event there has been a guardianship, or other legal proceeding had on the estate of any person, or persons legally committed to any eleemosynary institution, as provided in the preceding section of this law, then and in such event the Judge presiding at such trial will cause to be made at the time of trial certified copies of the inventory and appraisement of such estate by the clerk thereof, and a copy mailed to the eleemosynary institution to which such person was committed, and a copy to the State Board of Control at Austin, Texas, for which said clerk is authorized to charge against such estate the fees now allowed by law for certified written instruments. These certified copies are to be made and mailed as herein provided in lieu of the requirements of the preceding section of this Act.

"Section 4. It is hereby made the duty of the clerk of the County Court of each county in Texas, to make two (2) certified copies of the inventory and appraisement, if any, of the estate of any person heretofore committed to any eleemosynary institution of this State, and to mail a copy thereof to the institution where such person is confined, and one (1) copy to the State Board of Control at Austin, Texas, for which such County Clerk may charge the fees now provided by law for making certified copies of instruments.

"Section 5. It shall be the duty of the County Clerk to make two (2) certified copies of the inventory and appraisement of the estate of any person confined in any eleemosynary institution in the State of Texas that may hereafter come to his knowledge and to mail a copy thereof to the institution where such person is committed, and a copy thereof to the State Board of

Honorable Oliver H. Baker - page 6

Control at Austin, Texas, for which said clerk
is hereby authorized to collect the fees pro-
vided by law from the estate of any such per-
son for making certified copies of instruments.

"Section 6. The fact there now exists a
Statute which permits the commitment of insane
persons to a state hospital for more than ninety
(90) days without a jury trial, and the further
fact in such case no inventory and appraisement
is required to be made by appraisers, certified
under oath and mailed to agencies of the state
government, thereby occasioning a great finan-
cial loss to the state, because of lack of in-
formation relating to the estates of persons now
confined in eleemosynary institutions, creates
an emergency and an imperative public necessity
that the Constitutional Rule requiring bills to
be read on three several days in each House be
suspended, and said Rule is hereby suspended,
and this Act shall take effect and be in force
from and after its passage, and it is so enacted.

"Passed the Senate, February 22, 1943; Yeas
25, Nays 2; passed the House, April 29, 1943;
Yeas 138, Nays 0.

"Approved May 6, 1943.

"Effective May 6, 1943."

The transcript accompanying your letter of inquiry
states that the proceedings now in question (adjudication of
defendant as a lunatic) were had under authority of Section
3 of Chapter 152, page 251, Acts of the 48th Legislature,
Regular Session, 1943, supra, (same being compiled in Vernon's
Annotated Civil Statutes of Texas as Article 3193h).

We call attention to Section 1 of said Chapter 226,
page 347, General and Special Laws of Texas, supra, wherein
it provides that "no person shall be committed to any state

hospital or state institution . . . for a period of more than ninety days unless such person has been adjudged insane by a duly qualified jury in a lunacy proceeding, as provided for under the present Statutes of the State of Texas". (Underscoring added.) As shown herein, said Chapter 226, supra, was enacted and became effective as a law later in point of time than said Chapter 152, supra, though during the same session of the Legislature. Each of said Bills pertains to the same general subject matter, i.e., they are in pari materia, and, therefore, will be taken, read and construed together, each enactment in reference to the other, as though they were parts of law. See 39 Tex. Jur. pp. 253, 254, 258, 259. We see no conflict in these two bills. Said Chapter 152, supra, (House Bill No. 158, compiled in V.A.C.S. as Art. 3193h) does not authorize a lunacy trial without a jury; and said Chapter 226, supra, (Senate Bill No. 108, compiled in V.A.C.S. as Art. 3193o-2.) expressly prohibits a commitment of an insane person for more than ninety days without an adjudication by a duly qualified jury. Furthermore, as said Chapter 226, supra, is the latest expression of the Legislature on this subject, as such it amends and/or repeals any conflicting prior law to the extent of such conflict (such as Articles 3193-3193b, V.A.C.S., which purport to allow a lunacy trial without a jury). We do not see how the necessity for a trial by jury in all cases where a commitment of a person for a longer period of time than ninety days is sought can be ignored in lunacy proceedings under the present provisions of the Statutes and the Constitution of Texas.

We do not believe this right of trial by jury in such lunacy proceedings can be dispensed with in the face of said Chapter 226, supra, (Art. 3193o-2, V.A.C.S.) making it mandatory, in the case of a commitment for more than ninety days, that a trial be had by a duly qualified jury.

Therefore, it is the opinion of this department that the County Judge of Dallas County was not authorized to commit the defendant, Louise Dinglestedt, to said state hospital or institution for the treatment of the insane for a period of more than ninety days because said defendant had not been adjudged insane by a duly qualified jury in a lunacy proceeding, as provided for under the present statutes of the State of Texas.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Robert L. Lattimore
Robert L. Lattimore, Jr.
Assistant

LL:mb